## S. L. CROOK CORP. et al. v. COROD MINERALS CORP.

Court of Appeals of Kentucky.
Feb. 22, 1952.

Rehearing Denied May 2, 1952.

S. D. Hodge, Princeton, John T. King, Cadiz, for appellants.

C. A. Pepper, C. A. Lisanby, Princeton, for appellee.

SIMS, Justice.

Appellee, Corod Minerals Corporation, hereinafter referred to as Corod, sued the S. L. Crook Corporation, hereinafter referred to as Corporation, to recover $6,-109.29 for milling certain ore. By an amended petition Corod sought to recover from S. D. Hodge and Mrs. R. E. Crook $1077 as the proceeds from the sale of certain minerals it avers they wrongfully refused to pay Corod under a contract wherein Mr. Hodge was to sell the refined minerals and pay certain debts and apply the balance on the milling bill. By an amended answer and counterclaim the Corporation denied the debt and sought to recover from Corod $21,000 for the breach of its contract in not properly extracting the minerals from the ore.

The chancellor after hearing much proof by depositions rendered an exhaustive and well-considered opinion in which he directed judgment for Corod against the Corporation in the sum of $6,109.29, credited by $1077 for which sum he gave judgment for Corod against Hodge. The two questions confronting us on this appeal are: 1. Did Corod breach its contract by not properly milling the ore of the Corporation? 2. Did Mr. Hodge breach a contract he and the Corporation made with Corod?

In 1944 Corod operated a floatation mill at Marion, Kentucky, which extracted various minerals from ore and separated the minerals from each other. The minerals went into bins and the refuse of the ore, referred to in the record as "tailings", went into the millpond. It is not denied that Corod milled 691 tons of ore for the Corporation under a "cost plus" contract wherein the Corporation was to pay Corod the actual cost of the milling operations and in addition a profit of one dollar per ton on the ore milled. The proof shows the cost of milling the 691 tons of ore was $5,418.29. When Corod's profit of one dollar per ton is added to the cost of milling, the Corporation owed Corod $6,109.29.

The Corporation by way of counterclaim attempted to prove Corod did not properly clean the ore and that 75% of the minerals were not separated from the ore by the mill and went into the millpond as "tailings". Mr. Hodge, the attorney for the Corporation, Mr. S. G. Wigginton, who was in the

Corporation's employ, and Mrs. R. E. Crook, its secretary and treasurer, went to Corod while it was milling this ore and complained that too much of the minerals were going into the millpond with the "tailings". They took samples from the pond at a depth of 12 to 14 inches, which when analyzed showed a large percentage of the minerals had not been extracted from the ore in the milling operation. While Mr. Hodge, Wigginton and Mrs. Crook were taking these "tailings" from the millpond, Corod requested them to take "tailings" as they came from the mill while the Corporation's ore was being cleaned. They refused. The record shows other ore had been processed in this mill before and after the Corporation's ore went through it, and no witness did, or could, testify the "tailings" the Corporation had assayed came from its own ore.

An attempt was made to prove by Edwin W. Frazer that his brother, E. L. Frazer, had analyzed "tailings" from the Corporation's ore and it contained 45.06% fluoride and a considerable percentage of lead and of zinc. However, his testimony was hearsay, and, as the chancellor remarked in his opinion, it is strange the chemist who made the analysis, E. L. Frazer, was not introduced as a witness. Mrs. Crook testified to certain correspondence and telephone conversations with third persons relative to the improper milling of this ore. The chancellor correctly excluded this testimony as hearsay. Likewise, the chancellor was correct in ruling that Messrs. Hodge and Wigginton and Mrs. Crook did not possess the technical knowledge to testify as to the correct operation or working of a floatation mill, which is a highly complicated machine.

O. W. Greeman, a chemical engineer connected with Corod who graduated from Purdue University, with a post graduate course in the Missouri School of Mines, testified that 60 to 70 percent of the minerals in the Corporation's ore was saved when processed in the floatation mill, which is the average amount of recovery when working ore similar to this. He was corroborated by R. E. Swisher, likewise connected with Corod and a chemical engineer who holds no degree but has had much practical experience in operating floatation mills. Appellants offered evidence this mill was out of order at times, but the record shows there was no serious interference with its operation.

This court is in accord with the finding of the chancellor that there is no merit in the counterclaim and we concur in his judgment dismissing it.

After the ore had been milled and while the fluorspar, lead and zinc were in Corod's possession a contract was entered into on April 7, 1944, between it and the Corporation wherein it was agreed Mr. Hodge would sell the minerals and from the proceeds satisfy certain indebtedness and pay the balance to Corod. After satisfying the indebtedness and retaining a fee of $300 for his services, there was left in Mr. Hodge's hands $1077. Instead of paying this sum to Corod as the contract provided, Mr. Hodge paid it to Mrs. R. E. Crook, either personally or as an official of the Corporation. As a defense to his misapplication of this money and in not complying with the contract, Mr. Hodge and Mrs. Crook insist the contract of April 7th was obtained by fraud upon the part of Corod in representing the percentage of minerals the mill would extract from the ore and the price of milling it. There is no proof in the record to substantiate their charge of fraud and the chancellor correctly rendered judgment against Mr. Hodge for the $1077. No claim was made this contract was obtained by fraud until after it had been fully performed and Mr. Hodge had wrongfully paid to Mrs. Crook the $1077 left in his hands. Mr. Hodge was a stakeholder and where there is a controversy as to whom the funds should be paid, a stakeholder acts at his peril and should not pay either party, without the consent of the other, unless it is definitely ascertained to whom the money belonged. Day & Night Nat. Bank v. Blei, 247 Ky. 653, 57 S.W.2d 641 and authorities therein cited.

It was most unfortunate for Mr. Hodge that he paid this $1077 to Mrs. Crook without obtaining an order of court directing him to do so. In the circumstances there

is nothing we can do but affirm the judgment of the chancellor. However, should Corod be able to make its judgment out of the Corporation, then Mr. Hodge should not have to pay it the $1077. We construe the judgment of the chancellor as so holding.

Something is said in Corod's brief concerning the fee retained by Mr. Hodge, as well as the chancellor's action in dismissing Corod's claim against Mrs. Crook for the $1077. Since no cross-appeal was prosecuted by Corod, we are not concerned with either of these items.

The judgment is affirmed.